## KING *et al.* v. FARRIS.

No. 5326. Opinion Filed January 11, 1916.

(154 Pac. 510.)

**APPEAL AND ERROR—Findings of Court—Evidence.** Where an action at law is tried to the court without the intervention of a jury upon controverted questions of fact, and there is any substantial evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed on the weight of the evidence.

(Syllabus by Rittenhouse, C.)

*Error from Superior Court, Pottawatomie County;*
*George C. Abernathy, Judge.*

Action by S. W. King, Jr., and others, a copartnership doing business as King, Collie & Co., against J. A. Farris. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiffs in error.

*L. G. Pitman, E. E. Hood,* and *J. D. Lydick,* for defendant in error.

Opinion by RITTENHOUSE, C. This suit was instituted upon 27 causes of action arising out of a contract between King, Collie & Co., of Dallas, Tex., and J. A. Farris, for the cotton season of 1908-09, in the peti-

tion it being alleged that H. B. Sherman was the agent of the plaintiffs, and that all purchases from J. A. Farris should be made through such agent at Shawnee at prices to be designated by him, the cotton so purchased to be shipped to compresses designated by plaintiffs; that the defendant was to guarantee the weights at compresses, and the grade of said cotton should be determined by the classifications given by the plaintiffs when the cotton reached Dallas, Tex.; that when the cotton purchased from J. A. Farris during said season had been classed by them the amount that had been paid on drafts drawn by J. A. Farris was $1,921.80 in excess of the value of said cotton as classed. To this petition an answer was filed, setting up a counterclaim on each cause of action. It was denied that under the terms of said contract the plaintiffs were to arbitrarily grade or classify said cotton or any part thereof; it being alleged that said cotton was to be graded and classed at its full or actual grade or classification under the American standard of classification of cotton; that the defendant was to be allowed the same grade or classification on cotton sold to plaintiffs as plaintiffs put upon said cotton under the American standard of classification when they resold the same; that notwithstanding said verbal contract and agreement as aforesaid to grade and classify all cotton according to the American standard of classification, and give the defendant full, true, and correct grades and classifications upon said standard classification, and to pay said defendant for said cotton under said classification, these plaintiffs did falsely, knowingly, and arbitrarily grade and classify said cotton much lower than its actual and real value, had it been graded according to the American standard of classification for grading cotton, and much lower than the grade

or classification placed upon said cotton by these plaintiffs when they resold the same; that the returns made by said plaintiffs to this defendant as to the grades of said cotton were false and untrue, and not according to said American standard of classification; that said returns were known to be false, untrue, and incorrect at the time they were made by the plaintiffs to the defendant; that said returns and classifications of said cotton made as aforesaid were for the purpose of cheating and defrauding the defendant out of his lawful and legitimate profits in said cotton; and praying in said cross-petition for a judgment against the plaintiffs in the sum of $2,-729.33. Upon a trial before a referee, a finding was made and judgment subsequently rendered in favor of defendant, J. A. Farris, for $2,226.31. Motion for a new trial was overruled, and the cause brought here for review, wherein the plaintiffs rely upon but two questions: First, "What the contract was?" and, second, "What was the grade of the cotton?"

The trial court found that in the fall of 1908 the plaintiffs entered into an oral contract with J. A. Farris, whereby the defendant was to purchase cotton during the season of 1908 and 1909 at prices furnished by the plaintiffs, such cotton to be shipped to compresses to be designated by plaintiffs, samples to be drawn from each bale and sent to H. B. Sherman, at Shawnee, Okla., drafts with bills of lading attached showing number of bales and weight at compress to be made upon such agent; that the defendant was to guarantee weights; that in final settlement the weights at the compress should govern; that afterwards he was to furnish an additional sample to be sent from the compress from each bale, and said cotton to be classed according to the American standard of

classification, and the defendant in settlement was to receive the benefit of such classification under which they resold or reshipped the same; that in addition thereto plaintiffs were to pay the costs of exchange. It was further found by the court that during said cotton season Farris bought 2,278 bales of cotton, shipping the same in the name of the plaintiffs to different compresses; that he complied in all things with the terms of his contract; that all cotton purchased by Farris was received by the plaintiffs, and statements, called "out-turns," showing the number of bales, weight, class, and price, were given to the defendant, under which out-turns he was made to appear greatly in debt to plaintiffs, but that the said out-turns were false, and did not give the proper classification as agreed upon—that is, the American standard of classification, and that said out-turns did not grade as shown by the evidence; that, if the plaintiffs had classed the cotton in their out-turns to Farris according to the shipping class given it, they would have been largely indebted to the defendant; that the plaintiffs by letter informed the defendant that they had given him the benefit of their shipping class, but the court found that the statement was not true at the time when made, and the failure of the plaintiffs to produce the invoices or copies of invoices under which they shipped the said cotton, showing its class, and the total failure of the plaintiffs to make any explanation between their out-turns and shipping class, rendered the evidence of the plaintiffs in support of their petition almost worthless. The court also found that, under the contract as shown by the evidence, none of the plaintiffs' causes of action were sustained.

The plaintiffs contend that the evidence of J. A. Farris as to the grade given the cotton by himself and

witness W. A. Thompson was incompetent, because the grade was not made under the American standard of classification, and therefore it is urged that there is a failure of sufficient evidence on this vital point to support the judgment of the trial court. This is not so. J. A. Farris testified that he had in mind the American standard of classification when he graded the cotton, and that he reduced the grade under the American standard of classification. Objections were made to this evidence, because the cotton was classed under the classification contemplated by the contract; but the plaintiffs could not be heard to complain, as the classifications were more favorable to them than to the defendant. Had the grading been above the American standard of classifications, then the plaintiffs would have a just complaint. W. A. Thompson, a witness for the defendant, also testified that the cotton was graded according to the American standard of classification, and H. B. Sherman testified that the cotton he examined met the required test, and the drafts were paid upon such grades. Several witnesses testified as to whether the cotton was spotted or not. There was evidence in support of each cause of action set forth in the counterclaim.

The contention which was urged before the trial court, and which is advanced here, is that the grading of the cotton by the plaintiffs at their office in Dallas is binding upon the defendant. The trial court had before it the testimony relative to the contract, it heard the evidence of the plaintiffs as to how the cotton was graded, and it also heard the evidence on behalf of the defendant as to how it was graded by him. There was a positive identification by the defendant and his witnesses of the grade and condition of each shipment of cotton. This

was not true as to the witnesses for the plaintiffs, as it was admitted by all witnesses offered by the plaintiffs that they did not remember having graded the identical cotton in controversy, but merely testified to the general system of grading, explaining how they arrived at the classification, and procured the balance of their information to which they testified from the records in their office, not knowing whether they had personally graded the cotton or not. While the evidence is by no means conclusive, and in some respects very unsatisfactory as to fraud having been perpetrated, yet we feel that there was some competent evidence supporting the contention of the defendant that there was a mistake in the classification of this cotton, and the trial court was justified in finding for the defendant. This case was tried without the intervention of a jury upon the controverted questions of fact as to the proper classification of this cotton, and as there was evidence offered by the defendant showing a classification sufficient to support the findings of the trial court, such findings will not be disturbed by this court on the weight of the evidence.

We therefore conclude that there is evidence in this record reasonably tending to support the findings of the court, and the judgment should therefore be affirmed.

By the Court: 'It is so ordered.